Case number 253364, United States of America v. Daniel Barton Sr., argument not to exceed 15 minutes per side. Mr. Michael Ladenko, you may proceed for the appellate. Good morning, Your Honors, and may it please the Court. Michael Ladenko on behalf of Daniel Barton Sr. I would like to reserve three minutes for rebuttal. Fine. The District Court improperly sent Daniel Barton to prison for 24 months because the Court had already decided that it would. The Court gave away its own discretion to determine the appropriate sentence for the second violation of supervised release conditions at the first violation hearing when the Court said, you can do six months now or keep you on supervision and you don't sit on the sidewalk. If you do, I will send you to prison for 24 months. So in the subsequent hearing when Daniel violated the terms of supervised release again and came back before the Court, the Court sentenced him to 24 months in prison. And the reason that the Court sent him to prison for 24 months was because the Court had already picked the sentence, already decided that it was going to be 24 months, and intended to keep its word from the original hearing. Didn't the District Judge mention a few other factors, appropriate 3553A-E factors? The District Judge mentioned a couple of things that he had gone through some programs in the intervening period between the initial violation and then the subsequent violation hearing. But the Court told us that its motivating factor for picking the 24 months going above the guidelines of the statutory maximum was its original threat. The Court said, I would like to say that I am a man of my word, so I will hold myself to that. We have pretty similar language to that by District Courts in, for example, like the Glass and Epps are unpublished cases, but how do you feel like your case matches up to those? So, Daniel's case is different from Glass and Epps for a couple of reasons here. The Court quickly and dismissively goes through the history from the first violation hearing and it just mentions programs that he completed and then moves to the Court's word in response to counsel's objection at the end of the hearing for the sentence being 24 months so far above and outside the guideline range. The Court responded that I expect no less, but I would remind everybody that it was Mr. Barton's choice, not mine. In Epps and Glass, both of those cases show the record and the history of proceedings in, I believe both of them had at least four rounds of interventions before coming back on the ultimatum and getting the statutory maximum sentence. In Epps specifically, that defendant got a 10-month sentence before getting a statutory maximum, so the Court tried and documented that it had attempted a less-than-maximum sentence as one of its interventions before it got to the ultimatum. So all of that is in the record and how that got there. What we don't have here is why the Court went immediately to the ultimatum on the first violation hearing and then picked the statutory maximum. And when it picked the statutory maximum on the first violation hearing, the Court clearly did not care about the future or whatever facts of that potential violation could be because the Court told us it didn't care. It said, if you so much as spit on the sidewalk, we'll send you for 24 months. Well, but the particular violations that occurred were... Continuation of the original violation, having a device and using the device to access pornography, correct? I think they were similar. I don't think they're necessarily a strict continuation. We had that intervention. We had the programs that confiscated the first device. In a short period of time, he has a second device. That's correct. He was then told specifically not to have devices and not to use the devices to access pornography. Correct, Your Honor. He did. He admitted that in the second violation hearing. But even still, the Court picked the statutory maximum 24-month sentence, which at the first violation hearing with other violations, including a new law violation, would have sentenced him to six months, which would have been within the three- to nine-month guideline range. But we don't have beyond, I told you I would send you to 24 months. We don't have more to justify that upward variance to the statutory maximum. In Glass and Epps and quite frankly many of our sentencing cases, we credit the fact that the District Court listens to all of the parties' arguments and is looking at the sentencing memoranda and things like that and says, well, the District Court considered all of this stuff and considered all of the 3553A factors. Why wouldn't we do that here? Because what the Court, I'm going back to what the Court told us, because the record at the second violation hearing is so thin. We know that it considered the short time between the initial violation and this violation hearing, but the Court defaulted essentially to that 24 months that it had promised. The Court didn't go and reweigh why this is different than the first one. The Court didn't tell us why it needed to be the statutory maximum. It could have picked a nine-month guideline sentence. It would have still been more than what it had contemplated in the first period, but within the guideline range and presumptively reasonable. The Court doesn't have that presumption of reasonability going outside the guidelines and needs to explain its reason for the upward variance, which we don't have. Was this the same district judge that was involved in Glass or was it a different one? Forgive me, Your Honor, I'm not 100 percent certain. Glass was from the Northern District of Ohio also. I think the judge is different, but that's out there. My copy doesn't list who that district judge was in Glass. I guess the concern that I have is given the opinion in Glass, which I have to admit I wrote, how do we explain reaching the result that you want to reach here? How can we distinguish Glass? This case is distinguishable from Glass, Your Honor, in that with Glass we see the colloquy, the multiple chances at substance use intervention that is present in the record, that gets shown in the opinion. We don't have, and the Court goes into the repeated dishonesty of the Glass defendant with probation, the multiple urine screens, and that was... So you're basically saying that you have to give a person on supervised release multiple chances to violate the particular conditions of supervised release before you can impose a maximum sentence here of 24 months. I'm sorry, Your Honor, that's not exactly what I'm saying. Feel free to re-characterize your statement. What I did mean to convey is that when you see the colloquy and the multiple chances and that gets into the record and not just jumping to the statutory maximum for a subsequent violation, the Court is laying the groundwork for the justification to vary upward outside the guideline range. Whether it's an initial sentencing after a plea or trial or a supervised release violation hearing, the District Court is still responsible for justifying its variance from the guideline range upward or downward. We don't have that justification here. Or the only justification is because I said I would last time. Correct, Your Honor. I mean, if we take the record as we have it and we take the Court at its word because it said it would, that's not a statutory factor. That's frankly not an appropriate consideration and it's arbitrary. Just pick the 24 months because 24 months was the statutory maximum. One of the things I noticed about the Glass opinion is that, and I have to say I did not read the transcript in Glass, but the opinion for our Court says that the District Court quote explicitly stated that it had considered the 3553A factors. Do we have something like that here in the transcript? I will check the transcript to make sure I'm correct, Your Honor, but there was no explicit mention of considering the 3553A factors or 3583E as well. So would that have then made a difference if the District Court judge had said, you know, I'm a person of my word. I'm going to give you the statutory maximum, which I think we have similar statements in Glass, and then said, and I also think this is, you know, kosher given the 3553A factors that this all comports. Would your arguments here still be the same? I think we'd have a much more difficult argument than we do today because the Court would have specifically invoked the factors. Now the Court's not required to ritualistically invoke the factors at any sentencing, original or supervised release. There's not enough information in the record to infer that the Court had considered those factors without the explicit statement. So that's lacking. Even a guideline sentence, I think, would have some problems. But we have, you know, the statutory maximum, which needs more than just we considered the factors and we're picking the guideline sentence because we believe that's appropriate. If there are no more questions from the panel, I'd like to save the rest of my time for rebuttal. May it please the Court. Good morning, Your Honors. Jennifer King for the United States. The District Court imposed a procedurally and substantially reasonable 24-month sentence for Barton's second supervised release violation when it considered the seriousness of the violation and the failure of supervision to rehabilitate and deter Barton. Barton became a federal criminal due to his sexual desires for child pornography. Can I take you out of this case for one second, right? We don't have a published decision on kind of this issue about District Court judges giving these types of choice, like I won't sentence you to incarceration right now, but if you come back, you know, I'm going to give you the max, well above the guidelines. I'm going to give you the statutory max. If we were to write a rule about if that's permissible, when that's permissible, what we should be looking for when we review District Courts giving those types of choices, what would be the rule that we should write? Well, in comporting with what has been ruled upon in Glass and in Epps and in what occurred here, the rule would state that it would be permissible as long as it focused on the purpose being deterrence and then looking at the specific violations that occurred and then the subsequent violation, that it wouldn't be simply because it was arbitrarily 24 months. That's what I said last time as the district judge. So therefore, this time it must be 24 months. But wouldn't that rule be insulating district judges so that they could impose the statutory maximum sentence anytime you had a defendant who had problems with maintaining compliance with a particular rule, whether it's a rule about not consuming drugs, which is often the case that you have people who are addicted to drugs and it's hard for them to comply, or here, somebody who's accessing devices to access, and I believe it was just pornography as opposed to child pornography. But wouldn't that be allowing then district judges at the first supervised release violation hearing to say, okay, I'm going to give you a break. You can have a chance. But if you have another bad drug screen or if you have another device, I am going to throw the maximum at you. And then they don't need to have a weighing of all of the factors in sentencing that are appropriate for a supervised release violation. Well, the government is not advocating for a rule here. And I do see that there could be problems if a rule is established in saying one way or another as to whether... The district court judge here invokes and says, I've done this before. The Sixth Circuit says it's fine for me to do this. Okay. So it's not a horrible idea for us to actually provide some clarity. And of course, getting the input of both counsel here on what would be appropriate guidance to provide is, I think, prudent. Well, I think it then goes to the pros and cons of whether the district court can say something like this. The rule being clearly they can say this would discredit the 3553A factors and that those still need to be considered and that the need for deterrence incapacitation are there. So what did this district judge... And I have the transcript here. I'll be argumentative and then you can show that I'm wrong. On an argumentative basis, I would say the district judge basically is saying, I told you I was going to give you 24 months if you were back in my courtroom. And I'm giving you 24 months. I gave you a break before. I'm not giving you a break now. I said 24 months. That's it. And I agree with you, Your Honor. If that was the only thing the district court judge had said in this case, there would be problems. So what did he say? He said more than that. Looking at pages 159 through 160, the court references the danger that the defendant was to himself. He references the timeline, how it was a very short period of time. And actually, in fact, the defendant had a tablet and was looking at pornography at it while he was at his first violation sentencing, that he was looking at over 20 sites. And the court says the first thing that they... The first and most important thing they were looking at was the defendant's impulsive sexual desires and that that impulsiveness, despite the court's trying in the first hearing to give the defendant an opportunity, the most lenient sentence and continuing rehabilitation, that his impulsive desires were too strong for the deterrences that the court had put in place, that being the lingering 24 months that he might be sentenced to. The court also goes on to say we've given him a lot of help. The multiple different sex offender treatment programs that he was not doing very well in but had claimed that were making a difference were clearly not making a difference. And then the court goes on to say that it was a blatant violation. Maybe most important, the court asked Barton, did you consider the 24 months that I told you you would get if you violated? And he said he did consider it. And I believe that those statements go directly to the deterrence factor, that the court was trying to put in a specialized, individualized supervision for Mr. Barton so that he would not be looking at pornography, so that he would not be a threat to the community, and so that he could be rehabilitated. And so by putting the 24 months over his head, he put another layer of motivation behind Mr. Barton to hopefully comply. And when he asked him, did you even consider that, that even the threat of the most serious punishment that he could have was not enough to deter Mr. Barton from his sexual desires. And what was he looking at? It wasn't just simply adult pornography. He was at over 20 different sites, many of those sites fairly deviant sites that involved dominant submission. He was chatting with people. He was reaching out to individuals. He was looking specifically at twink sites, which would be adult men posing as minors engaged in sexual... All of that presented to the district judge? Yes. This information that you're telling us, because I don't see it in the sentencing transcript. Correct, Your Honor. It's not in the sentencing transcript. That would be in the violation reports, which the court did state that they had reviewed. The court makes little reference to it, but it is in the 20 different pornography sites that I believe were opened on the tabs of the tablet that he had when it was discovered by the probation officer. What's a little difficult is that these details that you're discussing, now some of them obviously, did you consider the choice that you had made things come into this transcript, but many of the details that you're providing, as Judge Moriarty was pointing out, aren't in here. And instead, we have statements that your friend on the other side has pointed out that really suggest that this district court judge is almost disclaiming the authority almost, or this decision making here. He's saying, and in effect, I put the robe on you. You have made this decision. I know these are not the statements you want to hear written back to you, but at the end of the day, when defense counsel objects, the last line of this whole thing is, I will remind everybody that this was Mr. Barton's choice. But of course, this has to be the district court's exercise of authority, as you said, with respect to applying the 3553A factors. But wouldn't the violation report have been a part of the record? I mean, we might not have it as a part of an appendix or something, but wouldn't it be a part of the overall record? Yes, definitely. So I'll answer that. I mean, there's not any question, but that that's all outside of the record, is there? The government's position is, no, it is not outside the record, or it is definitely within the record. And both violation reports, from the first violation and the second violation, are very detailed reports. I would remind the court that... Does the district judge refer to the violation reports and say, because of the seriousness of the violations in these reports? Let's just say another blatant violation, to answer your question. But I'm reading it too, as you are. The problem with this sentencing transcript is that it's very terse. And it really, you refer to pages 159 to 60. I mean, that's really it. And the government, and you were the government there, you asked for a relatively short sentence of three. The government would ask for a three to nine month guideline range sentence here. And then the district judge imposes the 24 months, which is the statutory maximum. Correct. In the district court, judges can regularly disagree with me and my... Yeah, but usually they would disagree with you and go downward, as opposed to going upward. At times, yes, your honor. I will point that there is no limit to which the district court judge the facts that they can consider. And they consider the thorough facts that were in the first violation report and then... This district judge is saying, essentially, it's your choice. You're a potential danger to yourself. You were here before. You have seen over 20 pornographic sites. It's another blatant violation. And this time, there's no choice. I'm a man of my word. So I will hold myself to that 24 months. Correct, your honor. And that is what we're working from. But the court already had a strong foundation and knowledge base about Mr. Barton. He had been a transfer from the Middle District of Florida. And at the first violation hearing and through those, he spent a lot of time listening about Mr. Barton's previous history, his violations, what his sexual issues were, what kind of treatment. He added additional conditions and gave him the most lenient sentence at the first violation hearing. He continued him on probation. He believed what Mr. Barton had to say, despite the probation officer saying at the first hearing, he's been lying to us. He keeps lying to us. I mean, two of his violations were for countermeasures during the polygraph. That even during the polygraph, he was lying. And it came out that he was lying during the first hearing. Oh, most definitely. Because during the first hearing, he had said that the tablet, which had been discovered a few months prior, that had been in the past, that the different programs he was going through were working, that he had had an alcohol problem, and that that alcohol problem was being resolved, and that he was the most compliant he has ever been. While at home, he had the tablet that's found on the second violation, with sites showing that two months prior to that hearing, he had been looking at pornography and was looking at pornography at the time he was at his first sentencing, when he assured the court that this was in the past. So all of that would have been taken into consideration by the court, that the court was looking at all of these facts, trying to rehabilitate Mr. Barton. And although the transcript is short on that, it wasn't simply because of the 24 months. The district court statements that the robe was put on Barton was saying that he had the free will, the ability to make the decision about whether he was going to comply, whether he was going to work with the probation officer, whether he was going to be a safe member in the community, and that he made the choice not to do so. He made the choice to get the tablet, that those are the decisions that he was making, not making the decision of what the sentence should be or acting as the district court judge, but he made the decision as to how he would act when on supervision. So if we were to affirm here, and we had the case of Glass, which is an unpublished opinion, and would we be establishing a principle that it is fine for district judges to, in a first supervised release violation hearing, to say, I'm going to give you a break, but if you violate supervised release conditions again, I'm going to throw the book at you and give you the maximum. Would we not then be really leading to what might be considered substantively unreasonable sentences, where the statutory maximum can be imposed by district judges just because they have warned defendants that if they violate any condition, such as the And I will note that this didn't have a drug screen here, although I believe it did in Glass, and that was the same district court judge, and that when looking at the substantive and the weight, the rule in just a vacuum of saying you can just put the statutory max over their head, no, I disagree. That would be a terrible rule. It has to incorporate still the 3553A factors. It still has to consider all those facts and circumstances. And so what are the 3553A factors that you believe this district judge mentioned? So the deterrence, for sure. When the district court is talking about the steps that it took, that it was a blatant violation as well, which would go to the, well, the incapacitation or the failure of rehabilitation is maybe the strongest one here, that they had given him lots of help and that that had not happened. And then the timeline alone in itself would also show that there was a failure of the incapacitation and then the rehabilitation because he received that additional time to do so, and he didn't take advantage of those extra months with the rehabilitation that he could have had. So I see that I'm out of time. Your Honor, we would ask that the district courts be affirmed in this. Thank you. Thank you. Thank you, Your Honor. To address the question you posed to my friend on the other side about affirming glass and creating the principle that would insulate district court judges on just a warning, that would have the effect of allowing district court judges to issue this warning on the record and then throw out the statutory requirements for determining a supervised release violation sentence. I don't think that this court should adopt a rule that has that effect. Should we be looking at what's important here? The rule that . . . the desirability of the rule that might be seen to be articulated, or is it more fact-specific to this particular case taking together everything the district court said over the course of these proceedings to the defendant about what he was doing? I think it's both, Your Honor. I think we need to consider the desirability of the rule that this court is going to articulate to the district court judges and also the fact-specifics of this case that the court does not articulate beyond, because I said I would, for varying upward. The sentence of three to nine months within the guideline range adequately captures the heartland of why Daniel was before the court again, just like it did the first time, but the court wasn't considering, the court told us it wasn't considering varying upward the first time. The court told us it was considering a mid-range sentence of six months. If we were to articulate a rule that I think I understand the government articulating here, something like even if the district court has offered this choice when they go to sentence on a further supervised release violation, they still must consider the 3553A factors. They need to consider the severity of the violation. For example, do the parts of the record that the government has pointed out here satisfy that test? The district court judge did say this is a blatant violation. This isn't like, oh, you turned in your report a couple days late or you missed one meeting for an excused reason. The district court does say this is a blatant violation. This talks about impulsiveness, all the help that they've tried. You considered the choice that you made when you were making these violations and it didn't stop you at all. How would that not satisfy the test that we're asking the district court to consider the factors? Your Honor, it doesn't satisfy the test specifically in this case on the facts of this case because as the court's response to the objection indicated, it understood the objection to the sentence being the statutory maximum. I see that I am out of time. Being that far outside the guideline range that Daniel and counsel below had a problem with the court picking the statutory maximum and it didn't justify, the court said I will remind everybody this was Mr. Barton's choice, not mine. It's the district court's responsibility to pick the appropriate sentence and to explain why it picked that sentence. We don't have that here, so I would ask this court to vacate and remand. Thank you. Thank you both for your argument. The case will be submitted.